IN RE APPLICATION OF HEAD.

[Cite as *In re Application of Head,* 114
Ohio St.3d 29, 2007-Ohio-2550.]

(No. 2007–0353—Submitted April 17, 2007—Decided May 30, 2007.)

**Per Curiam.**

{¶ 1} This cause is before us on the application of Kenya Danielle Head to take the Ohio bar examination and the recommendation of the Board of Commissioners on Character and Fitness.

{¶ 2} The applicant first applied to take the bar examination that was administered in July 2006. The board did not immediately approve her character and fitness because of allegations that (1) she had attempted to exert improper influence in appealing the denial of her request for special testing conditions to accommodate her disability and (2) she had failed to adequately disclose her disability as required in bar application materials. The board did not resolve these issues prior to the July 2006 bar exam, and the applicant subsequently applied to take the bar examination that was administered February 28 through March 1, 2007.

{¶ 3} A panel of the board heard the cause, and on February 9, 2007, the board adopted the panel's recommendation and recommended disapproval of the application to take the February exam. The board also recommended, however, that we permit the applicant to apply to take the July 2007 bar examination. We accept the board's recommendations.

The Applicant's Request for Special Accommodations

{¶ 4} The applicant began attending Capital University Law School ("Capital") in August 2003 and graduated in May 2006. She applied on November 12, 2004, to register as a candidate for admission to the practice of law in Ohio. On March 31, 2006, she applied to take the July 2006 bar examination, and shortly

afterward, the Butler County Bar Association's admissions committee provisionally approved her character and fitness.

{¶ 5} The applicant requested that she be provided special testing accommodations when she takes the bar exam. She explained that during her first year of law school, she had had difficulty completing examinations within the time provided and that she had had panic attacks in the classroom during testing. Terry K. Thompson, Ph.D., Capital's director of counseling services, counseled the applicant through one such attack during her first semester final exams. In February 2004, a nurse at Capital University Student Health Center referred the applicant to Dr. Debra A. Grayson. Grayson diagnosed the applicant with generalized anxiety, and prescribed medication.

{¶ 6} Thompson believed that the applicant might also have a learning disorder, and she suggested that the applicant see a specialist for an assessment. Thompson gave the applicant a list of such specialists, which included Nancy R. Krasa, Ph.D. Over the summer of 2004, Krasa evaluated the applicant by giving her a full range of intelligence, cognitive-functioning, and academic-achievement tests, and she discovered "distinct cognitive abnormalities" that possibly explained the applicant's inability to complete tests within the usual allowed time. She could not reach a precise diagnosis, however, and referred the applicant back to her physician. Krasa also referred the applicant to a reading specialist.

{¶ 7} The applicant's condition qualified her for special test-taking conditions under Capital's policy of accommodating students with disabilities. During the applicant's second and third years in law school, she took her exams in a room by herself and was given 50 percent more time than other students to complete her exams.

{¶ 8} The applicant asked the Board of Bar Examiners to give her similar accommodations when she takes the bar exam. The applicant submitted a report from Krasa on her disability and a report from Thompson on the accommodations she had received in law school. In a May 17, 2006 letter, the Board of Bar Examiners denied the applicant's request, citing a special-accommodations consultant's determination that the applicant's condition did not satisfy the definition of disability in the Board of Bar Examiners Policy on Applicants with Disabilities. The letter also advised that the applicant could appeal the denial to the board chairman within ten days, that her appeal would be "conducted on the basis of the record compiled before the Board," that she would be "limited to a written argument in support of [her] appeal," and that the chairman's decision would be final.

{¶ 9} Michael P. Morrison, the Chairman of the Board of Bar Examiners, and the applicant knew each other through Morrison's wife, attorney Sarah Morrison. During the applicant's first year at Capital, Sarah Morrison had supervised the

applicant in her work as a law clerk for Chester, Willcox & Saxbe, L.L.P. Sarah Morrison had befriended the applicant, and Michael Morrison sometimes joined them for lunch or on other social occasions. After her clerkship ended, the applicant maintained a friendship with the couple, especially with Sarah.

{¶ 10} The applicant decided to appeal the Board of Bar Examiners' decision. She asked the special-programs officer for the Board of Bar Examiners how to prepare her appeal, but she was not satisfied with his response. She also consulted Grayson, who wrote a brief synopsis of the applicant's medical condition for use in the appeal, and Thompson, who wrote a more detailed account of the applicant's condition and also explained the special accommodations that Capital had afforded the applicant. In discussions with Thompson, the applicant mentioned that she knew someone "involved in the bar examination process" and asked Thompson whether it would be inappropriate to contact that person. Thompson replied that she saw nothing wrong with the applicant's asking that person for guidance on what type of evidence she could submit with her appeal. The applicant then decided to ask the Chairman of the Board of Bar Examiners, Michael Morrison, how to present her case.

{¶ 11} On May 25, 2006, the applicant sent a long e-mail to Morrison in which she acknowledged that he would "make the final decision about [her] appeal" and asked for his guidance in preparing her appeal. The applicant introduced herself by reminding Morrison that she had formerly served as a law clerk for his wife. The applicant then described in great detail the difficulties she had experienced in obtaining a diagnosis of and treatment for her disability, the difficulties she had had in her studies before Capital arranged to accommodate her disability, and her "hysterical" reaction to the letter denying her request for special accommodations during the bar examination. She also pleaded with Morrison to grant the requested accommodations, writing, among other desperate entreaties, "I simply cannot function under the standard/normal testing conditions" and "I have not taken a test under standard conditions for 2 years—to start now would destroy me." Before ending her one-and-one-half-page, single-spaced e-mail, the applicant once more referred to her friendship with Morrison's wife ("You can ask Sarah about my character, as she has personally watched me transition through school as a very scared, frustrated and academically challenged student, to a more confident student, but only after accommodations were made") before concluding the e-mail with the assurance that she was "not asking for any 'favors' " from him in the disposition of her appeal.

{¶ 12} The applicant insisted at the panel hearing that she composed this e-mail without any intention of influencing Morrison's decision whether to grant her request for special accommodations. Given the wording of the applicant's e-mail, however, neither the panel nor the board believed that the applicant had sent her

impassioned pleas and repeated references to Morrison's wife merely to obtain Morrison's guidance regarding appeal procedures. Indeed, Morrison considered the e-mail an attempt to take advantage of their acquaintance, and he forwarded it immediately to the secretary of the Board of Bar Examiners. The secretary appointed an acting chairman, and he later denied the applicant's appeal, foreclosing special accommodations.

{¶ 13} In response to intense questioning during the hearing, the applicant ultimately conceded that her e-mail was more than a general inquiry about how to prepare an appeal. In the end, she also recognized the lapse in judgment she had shown in privately arguing the merits of her appeal to Morrison and including references to his wife. The board thus found that the applicant had attempted to exert improper influence in furtherance of her appeal for special accommodations. For the cited reasons, and because the May 17, 2006 denial letter specifically explained the appeal process, we also doubt the applicant's stated explanation for e-mailing Morrison.

The Failure to Disclose

{¶ 14} The panel and board also found that the applicant had failed to disclose her disability on her November 12, 2004 application to register as a candidate for bar admission and again on her March 31, 2006 application to take the bar examination. In both applications, the applicant answered no to the question "Do you currently have any other condition or impairment * * * that in any way affects, or if left untreated might affect, your ability to practice law in a competent and professional manner?" She also answered "no" to the same question on the application that she filed on November 1, 2006, to take the February 2007 bar exam; however, at that time she additionally reported:

{¶ 15} "I am currently being treated for a Central Processing Disorder and anxiety. * * * If left untreated, I could still practice law in a competent and professional manner. However, it is my intention to practice law in a low key environment in order to minimize the anxiety, and to control my processing disorder, so that I will be an even stronger attorney as I practice law. I can function normally, I just have difficulty processing information and/or communications that are delivered rapidly; which is why I have significant problems with test taking. Even with my disorders, I can still practice law in a competent and professional manner."

{¶ 16} The panel and board found the applicant's answers irreconcilable with her diagnosed conditions and the special testing accommodations she had received from Capital. Neither the panel nor the board, however, specifically cited these inconsistencies in justifying the recommendation to disapprove the applicant's character and fitness, and this omission tells us that the panel and board accepted the applicant's explanation for initially failing to disclose her disabilities.

{¶ 17} At the panel hearing, the applicant testified that she answered no to the question "Do you currently have any other condition or impairment * * * that in any way affects, or if left untreated might affect, your ability to practice law in a competent and professional manner?" because she was being treated for her condition and, even if she were not being treated, she believed that she could still practice law in a competent and professional manner. Although this response is optimistic, given the applicant's experience with her condition, the fact that she disclosed her disability on forms seeking special accommodations, which she submitted along with each application to take the bar, shows that she never meant to conceal this possible impediment to bar admission. See Gov.Bar R. I(11)(D)(3)(e). We therefore agree with the panel and board that the applicant's failure to adequately disclose her disability does not reflect negatively on her character and fitness to practice law.

The Board's Recommendation is Appropriate

{¶ 18} An applicant for admission to the Ohio bar has the burden to prove "by clear and convincing evidence that the applicant possesses the requisite character, fitness, and moral qualifications for admission to the practice of law." Gov.Bar R. I(11)(D)(1). To be approved for admission and to take the bar exam, the applicant must have a record of conduct that "justifies the trust of clients, adversaries, courts and others with respect to the professional duties owed to them and demonstrates that the applicant satisfies the essential eligibility requirements for the practice of law as defined by the Board." Gov.Bar R. I(11)(D)(3). Applicants must establish their ability to exercise good judgment in conducting their professional business; to act with a high degree of honesty, integrity, and trustworthiness in all professional relationships and with respect to all legal obligations; to respect and act in accordance with the law and the Code of Professional Responsibility; and to conduct themselves professionally and in a manner that engenders respect for the law and the profession. Supreme Court of Ohio, Definitions of Essential Eligibility Requirements for the Practice of Law, Requirement Nos. 3, 4, 5, and 10, http://www.sconet.state.oh.us/admissions/pdf/ESSENTIAL_ELIGIBILITY_REQUIREMENTS.pdf.

{¶ 19} The applicant disregarded these requirements when she used her friendship with the Morrisons to urge the Chairman of the Board of Bar Examiners to grant her request for special accommodations. The board thus appropriately recommended disapproval of the applicant's application to take the February 2007 bar examination. But citing the strength of her character evidence, the board further recommended that the applicant be permitted to apply to take the July 2007 bar examination. We also accept this recommendation.

{¶ 20} Many members of the legal community, including many for whom the applicant had worked as a law clerk, wrote letters to express their confidence in her personal integrity and professional competence. Many of the applicant's law school professors, former classmates, and other acquaintances similarly attested to the applicant's character and fitness to practice law. The testimony of Stanton Darling II, the applicant's second-year civil-procedure professor at Capital, illustrates the esteem in which the applicant, even as a recent graduate, is held by colleagues.

{¶ 21} Darling confirmed that the applicant's disability impaired her test-taking ability, but he commended her outstanding classroom performance and efforts to overcome her disability. In fact, his high opinion had led him to select the applicant as one of his two research assistants for the 2005–2006 academic year, and he described her work as timely and excellent. Darling also reported his confidence in the applicant's integrity, adding that he trusted her completely and would recommend her without reservation.

{¶ 22} Based on these testimonials, we accept the board's recommendation to disapprove the application and to permit the applicant to apply to take the July 2007 bar examination.

Judgment accordingly.

MOYER, C.J., PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER and CUPP, JJ., concur.

___

Mary Lou Kusel, for the Butler County Bar Association.

Kegler, Brown, Hill & Ritter, L.P.A., Geoffrey Stern, and Rasheeda Z. Kahn, for the applicant.